May I proceed, Your Honour? I would like to preserve three minutes for rebuttal. May I please the Court, Nicholas Porrett of Levy & Kosinski on behalf of the plaintiff and the class. This appeal is based on two fundamental flaws contained in a jury verdict in favour of defendants in a securities class action. The first flaw is that the District Court gave an improper and prejudicial instruction to the jury on the critical issue of Sienta, Sienta being a central issue in any securities fraud case. In its instruction, the Court misstated the law and imposed a higher burden on plaintiff than what is required. It did this by requiring plaintiff prove by preponderance of the evidence that Elon Musk acted knowingly when he published false tweets about taking Tesla private in August 2018. This was especially prejudicial as before trial, the District Court had awarded summary judgment against Mr. Musk and in favour of plaintiff on the issue of Sienta by finding Mr. Musk acted with deliberate recklessness, which meets this required standard under the Ninth Circuit precedent for Sienta. And that is, in fact, something that was communicated to the jury. It was communicated to the jury in the words that they were to assume that he acted with deliberate recklessness. Then in the next sentence, the Court instructed the jury that they still had to consider whether he acted knowingly. And that wasn't incorrect, perhaps not with regard to Sienta, but it was a proper instruction with regard to a question that the jury might have to face later in terms of apportionment. But first it was in the context of a Sienta instruction. So that in itself is at a minimum confusing, I would say, a misstatement of the law. Did he ask a question about it? The jury did not ask a question about it. I'm not sure a jury question is required to show that a jury instruction isn't confusing or a misstatement of the law. But it wasn't really that confusing. I mean, there was a supplemental instruction given during the trial using very similar language to which your client did not object. Well, we did object to that, but that was not the instruction that we saw at that particular time. The jury instruction both at the end of trial and the curative instruction during trial said explicitly the plaintiff has the burden of proof to prove that Elon Musk acted knowingly when he made those tweets. That is a false statement of the law. Plaintiff had no burden of trial. Where does that say? I mean, I'm looking at the instruction. It doesn't quite say what you just said. Well, if you're looking at the jury instruction on Sienta, the closing jury instruction, the final jury instructions, it starts off by saying plaintiff must prove by preponderance of the evidence that Elon Musk and or Tesla acted with the necessary state of mind. And then it concludes you must still decide whether Mr. Musk acted knowingly. That's in the context of that jury instruction. I don't think it's possible to read that, you know, a reasonable construction of that jury instruction is that plaintiff must prove by preponderance of the evidence that Mr. Musk acted knowingly. I can read it that way. You must also assume Mr. Musk acted with reckless disregard for whether the statements were true. And they just said reckless disregard as a basis for finding Sienta. As I said, I think it's well, the fact that he can't, the court contradicts itself within two sentences as to whether it's found or whether the court, the jury needs to consider the issue in the context of this jury instruction. If this had been in, there was a later instruction on apportionment. So if this is a statement in a jury instruction on apportionment, may not have been objectionable. It would have to depend on what the plaintiff's burden was. But in the context of the Sienta instruction, which again starts off as in the elements of the case, it was also repeated earlier on in jury instruction number six. It's very similar language where we said the plaintiff had the burden of proof to prove all the elements and stated once again that the court, that in that context that the jury must consider the question of Mr. Musk acting knowingly. And in the context of the curative instruction given that plaintiff explicitly stating plaintiff had the burden of proof to prove that Mr. Musk acted knowingly. Mr. Port, you didn't object to the we must assume line itself, did you? We did object to the we must assume. There was a lot of back and forth in the jury instructions. So what was your problem with the we must assume portion? I don't think it gave full credit to the import of summary judgment. So we initially, our initial proposed jury instruction said that you must find that this element has been established as a matter of law. And then there were various, the court rejected that instruction. There were at least two or three rounds of drafting this jury instruction. There was a lot of back and forth on this. And the court persisted in the we must assume and we pushed back on it every single time, I think, even including in our final jury instruction, objection to the final jury instruction, which was filed on July 31st, the very day, the day before the jury instruction was actually given to the court. I took your proposed jury instruction to seem not that different than the final jury instruction that was given. Was it not you must still decide whether Mr. Musk knew that the statements were false? Wasn't that your proposed jury instruction alternative? Not in the final set of jury instructions filed on July 31st. So our final set of jury instructions, and if I may, Your Honor, if I can refer to the record, I can. There's a lot here. We could use the help. I mean, I keep confusing the multiple instructions, including the early one, given you're in trial. There was a lot of back and forth, Your Honor. So if you bear with me, it's at our final proposed jury instruction on CENTER is contained at the Volume 7 of the Excerpt of Record at page 1468. Our proposed jury instruction was before this trial began, the court decided that the statements funding secured and investor support is confirmed were untrue. The court also decided that Mr. Musk acted recklessly when making these statements. You must treat these elements as having been proven by a preponderance of the evidence. Therefore, your deliberation is limited to whether these untrue statements were material. That was our proposed final jury instruction. It was different from ones we proposed pre-trial. It reflected the fact of the way that evidence and argument had been presented to the jury during trial, which is why final jury instructions are not settled until after the evidence comes in. We asked for the initial curative instruction. So how would you handle the separate need for the jury to determine knowing for purposes of apportionment? What did you propose in order to have the jury entertain that issue? We had a separate jury instruction on apportionment. The plaintiff does not bear the burden of proving knowledge on apportionment. It is unclear who has the burden. So your concern was lumping it in together here might have confused the jury as to whose burden it was to show knowledge. And whether state of mind was relevant for liability before even getting to apportionment. Apportionment was at the end of the jury form. It's at the end of the jury instructions because it only applies once you have liability. So the structure of the jury instructions and the jury verdict form followed the model jury instructions, which starts off with the elements, then goes through and then leads to apportionment at the end, which makes logical sense. And so we wanted to make it very clear that knowledge or state of mind of Mr. Musk was not an issue at trial. We had no burden to prove any state of mind for Mr. Musk at any aspect of the trial. Can you deal with prejudice, because I did see several places in the closing arguments where arguably this issue was clarified, that the center element for the purposes of liability was established. Well, I think it was first of all, I don't think I don't think counsel argument can fix a legally erroneous jury instruction. The court has the duty. Whether there was prejudice, that's the question that Judge Sung has posed. And I have to say, I've got the same concern. My sense is not that the jury's verdict turned on Center because that wasn't what was really teed up for them to consider. The argument suggests that there's much more fight over materiality. So why should we assume that what you've described as a defective instruction on Center was the problem? Well, because defense counsel literally said that is what this entire case is about, is Mr. Musk's state of mind. That was in his closing argument. Mr. Musk's counsel. So we asked for the curative jury instruction initially based on his opening statement, which introduced ideas of state of mind, contrary to the court's summary judgment motion. And there was the supplemental instruction given. Was it immediately before his testimony or was it after? It was before or maybe it just started. I can't remember exactly where it was because his testimony went over several days. But so we had that. We did issue another emergency motion for curative instruction after, you know, just before the close of evidence, citing repeated evidence introduced by defendants going to his state of mind. That request was denied by the court. We then had during closing, and we then objected to the final jury instructions, and then during closing, we had repeated statements, again, saying as far as by Mr. Musk's counsel, saying, you know, in that moment, Mr. Musk did not form some intention to deceive. He doesn't think ahead of time that this can be interpreted differently than what it means to him. That is what this whole case is about. It is unmistakably true in his mind. We have every plaintiff of every burden, including Sienta. What illicit intention did Mr. Musk have? All of that goes directly to state of mind. It's not relevant at all to materiality. And so with a general verdict form, with an erroneous legal jury instruction, prejudice is presumed. It's particularly presumed when it increases the burden placed on plaintiff. Well, I'm not sure that I agree with the proposition. But how did we come to have a general verdict form? I used to try cases, complicated cases. I don't recall ever having a form as simple as this. Who proposed a general verdict form here? I think both parties agreed that there would be a general verdict form. I mean, the general verdict form, we didn't object to the form of the verdict form. And certainly on appeal, I don't think there was defendants in the end objected to the general verdict form either. The problem for us is trying to decipher a verdict when we don't have anything that really tells us. We hear the argument that we've heard from you. I'm sure we're going to hear something different from your colleague across the aisle. But as I looked through the record of the trial, it seemed to me that much more focus was on materiality. Well, I may have been led to that because the argument here in the briefs on appeal has that whole separate issue with regard to materiality. But how can we conclude there was prejudice if there's such a plausible explanation for why the jury might have rendered a general verdict? Well, but, Claude, that's not the standard, Your Honor. I mean, the standard is that once we establish that there was an erroneous jury instruction, matter of law, prejudice is presumed. That's under Caballero, very clear authority of this court. But you're starting with the premise that erroneous has distinguished from confusing. And I'm not sure confusing produces the same result that you're intending. Well, the decision we decided in Gantt, which was really a moral element of, I mean, I think it's a spectrum between where confusing blends into erroneous. But in Gantt, we had a confusion about, again, a state of mind instruction about whether intent, you know, deceit versus negligence. And there this court found that that was sufficiently confusing, the way it was stated, was sufficiently confusing that, therefore, it required reversal in a new trial. And, again, prejudice resulting from that jury instruction is presumed and burden shifts to defendant to show, essentially, a complete absence of proof on any element. So they must show that plaintiff failed to provide any evidence on necessary elements of our claims, and they failed to do that. We purposely presented evidence on every single element of the 10b-5. Now, and that's a different standard than just sufficiency of evidence. They had competing evidence on some of these elements. But that's not the test when considering prejudice under a jury instruction because here they have the burden and they've failed to do so. We've cited cases such as Hunter where the jury, this court reversed a jury where there was an erroneous jury instruction, even though there was competing evidence and sufficient evidence to support a jury verdict, if properly instructed. And that's the key. So the answer is we don't really know what was in the jury's mind, and this court should not inquire and cannot inquire into that state of mind. Moving on to... You're out a minute and a half, if you want to... That was from 15 minutes. Yes. So I'll be very brief on the 50b, on the materiality, different standard, but there was no substantial evidence to support any finding other than that these statements were material. And that court inappropriately denied our motions for that. Judgment should be entered in our favour on the question of materiality, which also means reliance because they're the same inquiry. And so that is a set of grounds to require reversal and remand on that ground. Okay. I'll give you a couple minutes on rebuttal. Thank you very much, Joanne. May it please the Court. Elodie Thompson, Quinn Emanuel, or Carden Sullivan on behalf of defendants. I'm going to correct a few things on the chronology here because I think it's very important as to a threshold question, which is preservation. And that is that plaintiff did not preserve the objection. They are now raising on appeal here. If you look at nothing else, I ask that you look at supplemental excerpt of record, page 68. That is the first page of the court's proposed final jury instructions that were provided to the parties on the docket on January 6, 2023. I think my colleague made this in July. It was all January. But on January 6, 2023, on the first page, supplemental excerpt of record, page 68, the court says the parties shall file objections by January 11, 2023. Both parties did, in fact, file objections on that day, but plaintiff did not file objections as to what now is challenged on appeal. Instead, on that day, plaintiffs specifically proposed as to the scienter instruction that the court instruct the jury, quote, you must still decide whether he acted knowingly. That is supplemental excerpts of record, page 65. That dooms any argument that plaintiffs are trying to raise here that there was legal error in the scienter instruction because of that little line. That is the exact last line that the court adopted in its final scienter instruction. That's at excerpts of record, page 48. And what plaintiff now challenges on appeal is what plaintiff adopted and proposed on January 11, 2023. The challenge is not preserved. Instead, a plaintiff ---- I'm looking at SER 65, which I take it is the plaintiff's objections. And I confess I've gotten confused because there are so many versions of the instructions. Sometimes I need a scorecard. I understand your point and have noted that, but there is an objection there to the you must assume language suggesting that that's not strong enough. And the concern I hear expressed by plaintiff's counsel is that because that's not strong enough, they read the last sentence to modify the rest of the instruction to take back or to open the door to an argument that their alternative language for you must assume would have closed. Well, Your Honor, the district court addressed this issue. And, first of all, there's no legal error as to saying assume or the court decided. That's fully within the discretion of the district court. But also the district court was very clear with the jury, with the jury instructions, and with the instructions during evidence that materiality had not yet been decided. And the reason why these instructions were given during testimony, during the testimony from Mr. Musk, is because testimony that Mr. Musk was given was relevant to materiality. And then, of course, there's also the knowing aspect as to apportionment. And so there can be no legal error as to the assume formulation. But I think, as Your Honor said, in fact, the jury instruction that the court gave was correct and wasn't confusing at all. In fact, when plaintiff changed its mind and belatedly objected, and I do think the timing is important here because we have this adoption and proposal of the challenge language on January 11th. It's 20 days later, on January 31st, that plaintiff finally objects and changes its mind. That is the day before the court reads the instructions to the jury, after the court said that objections had to be filed by January 11th. Well, counsel, don't our cases say that an objection can still be timely even if made before the instructions get to the jury? So I take your point. It was after the court indicated when he wanted objections. But why isn't it timely under our case law? Well, because, Your Honor, first, this was not a new instruction. This was not something that only came up the day before the instructions went to the jury. It had been proposed by the court on January 6th. And the court set a specific deadline for objecting to that. So there's those two reasons. One, it wasn't prompt. But did the court say, well, you didn't submit it by January 11th, so I'm not going to consider your later objections? Actually, standing here today, we don't even know if the court even read that filing before the instructions were given the following day. Why? Because the court had held a huge procedure. Preliminary ‑‑ proposed jury instructions were filed back in September of 2022. There was a lot of back and forth. There were instructions from the court on January 6th. On January 11th, objections were due. There was a conference with the court in which certain instructions were discussed. And at no point from January 11th until January 31st, the night before the instructions were read to the jury, was this issue raised. But, again, there can be no claim of legal error when the party challenging it as legal error adopted and proposed that instruction as plaintiff did on January 11th. And, in fact, the court in its ‑‑ Well, to take Judge Clifton's point, he didn't propose ‑‑ I mean, you have to read it in context what they proposed. So he didn't propose the exact ‑‑ they may have proposed the sentence, but they didn't propose that sentence in the same context in which they were delivered to the jury, did they? They didn't propose that exact sentence with the assume at least reckless disregard. That is correct. But when, actually, we look at the context of the jury instruction, that specific instruction, and the jury instructions as a whole, as this Court is required to do, they were absolutely correct. The instructions correctly stated the law in center. I just want to get ‑‑ Yes. I understand your argument is that they're correct, but you are also arguing that they proposed them themselves. I just want to be very clear. They proposed one sentence, but in a different context, and you're not representing that they ever proposed them in the final form that they were actually given to the jury, did they? They were not the exact final form, no. But there were many elements in the final form that were exactly what plaintiff proposed, including the disjunctive either‑or formulation. When plaintiff proposed jury instructions back in September of 2022, plaintiff proposed that the court instruct the jury that center could be established by either knowledge that the statement is false or reckless disregard. And, in fact, that is on page supplemental excerpts of record 83. That is the proposal of the disjunctive format. It's not this element has been satisfied jury, nothing for you to do here. Now, the final instruction that the court gave embodies that disjunctive format. It says center may be established by showing either, one, the defendant knew his untrue statement was false, or, two, the defendant had reckless disregard for whether the statement was true. That's the standard in this court. The district court probably gave the instruction as to the element of center in a 10B5 claim. The district court always used the either‑or proposition that either reckless disregard or knowledge would satisfy it. And that distinguishes this case from the Gantt case that plaintiff cites in which it was supposed to be disjunctive, but the court neglected that either‑or formulation. So that Gantt case doesn't help plaintiff here. But then here, of course, the district court informed the jury that the element had been met. Far from ratcheting up plaintiff's burden of proof, the district court told the jury that Mr. Musk had acted with at least reckless disregard for whether the statements were true. The jury instruction expressly conveyed that center had been established for the 10B5 claim. That's why the district court post trial called plaintiff's objection nonsensical. It would make no sense to find an instruction erroneous for emitting a possible path that the judge expressly directed the jury to take. And as the district court explained post trial, and as everyone recognized, knowledge was relevant as to apportionment. So even when plaintiff belatedly objected to the instruction, plaintiff didn't say this is legal error. Plaintiff said, move it to the apportionment instruction. The instructions as a whole were correct. Now, there's also the issue that ‑‑ which has been raised, that Mr. Port, during his closing argument, repeatedly told the jury without contradiction that this element had been met. And this court's case law is very clear that arguments from counsel are to be considered in determining whether there was any confusion as to a jury instruction. I would direct the Court's attention to excerpts of record pages 607 and 608. In addition ‑‑ Roberts, your colleague has pointed to statements by, I take it, the closing argument on behalf of defendants that focused attention, he argues, back on the scienter or knowing element. And, in fact, there were statements about what Mr. Musk did and did not know and intend. Your Honor, I think when the Court reads those statements in context of the closing arguments, it is actually apparent that the argument goes to either materiality or as knowledge as to Mr. Musk, Tesla, and the directors. For instance, there's discussion, you know, as to motive or intention. But when it's discussed there, it says, with all these lawyers and consultants and board members, those are the people among who the apportionment decision is made. And so knowledge is relevant to that determination. And, of course, it was fair to argue knowledge as to Mr. Musk, as to Tesla, and as to the board of directors. But the crux of the evidence at the trial focused on materiality. And what was unique about this case is that the district court determined at the summary judgment stage that the statements were factually inaccurate but did not determine that they were material. And so one of the questions for the jury was whether the statements were material, meaning whether the delta between the true state of affairs and what was posted in those tweets was large enough that it would affect a reasonable investor's investment decision. That was the question. And there was tons of evidence from witnesses, Mr. Musk included, but Mr. Deese, Mr. Durbin, analysts from all over, about what people thought this phrase, funding secured, meant. Because it's not a term of art, and as the district court noted in its summary judgment decision, there's a softness to the term. So it was relevant to assessing materiality, how people interpreted that term versus what actually the true state of affairs were. And that's why the court allowed testimony from these witnesses, including Mr. Musk, as to what was going on at the time. What were the meetings that were happening? What was promised to be done? Or what was the intent of what was going to be given? Well, in our world, which isn't the same as the necessarily investors' world, secured as in secured transactions does suggest a firmness, a certainty that it appears it was argued was not either intended or conveyed by those two words in the tweet. Why should we accept the soft version? Well, the question in this, I think, gets to the Rule 50B as to materiality, and that is simply inferences drawn in favor of the verdict, in favor of defendants here, as to whether that plaintiff proved materiality by preponderance of the evidence. What the evidence at the trial actually showed was that people understood that phrase funding secured to mean Mr. Musk was in touch with the capital required or had a line of sight toward funding. That's Supplemental Excerpts of Record 358. There was ample funding available for the transaction. Mr. Littleton said that when on August 13th there was a blog post that said, Mr. Musk wrote, here's why I said funding secured, Mr. Littleton testified that that blog post, which an expert for plaintiff said was a corrective disclosure, confirmed for Mr. Littleton one version of funding secured, that's Supplemental Excerpts of Pages 191 to 92. And so here there was the error that they're claiming now is not preserved. There was no legal error anyways, and even if there was an error, it was absolutely harmless. Thank you very much. If there are no further questions, we ask the Court to affirm. Do you want to say anything on the second issue, that is materiality as a matter of law is distinguished from materiality as a factor of prejudice for the alleged misstatement of the scienter instruction? Well, again, I think the representation from Plaintiff's Counsel as to what the standard is, the delta between sufficiency of the evidence and that it's more probable or not that the verdict would have been the same, it was not accurate. That's the prejudice issue. I'm really curious if we would reach it, and we may not reach it, is there something that you would, I confess I probably should have asked Plaintiff's Counsel. It's still not entirely clear to me what it is they're seeking. I take it they're not actually seeking a judgment as a matter of law generally. They're asking for a verdict in their favor. So I understand that they are asking if there is a new trial that an instruction, that we direct the giving of instruction that takes materiality off the table, telling them that they're supposed to assume that's been established too. As to that latter version, is there anything further you want to point us to? Well, again, this is a case where a plaintiff is making a Rule 50B motion but failed to move on all of the elements of the claim. And so there's a procedural bar here, which is that a litigant, a plaintiff can't litigate his case piecemeal. I'm going to go to the district court. I'll allege an instructional error in appeal, and then you can give me this element, and I'll go back and I'll try the rest. It has to be as to all of the elements if you're a plaintiff. Different, obviously, if you're a defendant, because you can secure a verdict in your favor if a single element is not met. But for a plaintiff, they had to move on Rule 50B as to all elements. Of course, they did not move as to loss causation. And so even on appeal, they're only moving us to materiality. If there is a new trial, it would obviously be an entirely new record, and materiality would have to be assessed on that new record in that new trial. Thank you very much. Thank you, Your Honor. If I could just briefly go back and just correct something that my friend, Ms. Thompson, advised the court, which she said at no point was the question of Sienta and the instruction of Sienta to the jury raised between January 11th and January 31, and she described it as a belated, too late objection. First of all, some important things happened between January 11th and January 31, which is that we had 10 days of testimony in front of the jury, as well as opening arguments on behalf of counsel. And so, obviously, the final jury instructions are not settled until the end of trial, because they're affected by the evidence that comes in at trial. You're not entitled to a jury instruction. They're not supported by the evidence at trial. And that is why Rule 51 is very explicit, and this court's jurisprudence is very explicit, that an objection to the jury instruction may be made at any time before the jury retires, not even before the jury instructions are given, but before the jury retires. And here they were given well before the jury retired, several days, which is an eternity at trial, and a day before the jury instructions were actually delivered to the jury. And it's also incorrect to say it wasn't raised between January 11th and then it came out of nowhere on January 31. As I explained, January 20, we made the initial request for a curative instruction after the opening statement by counsel raised and presented to the jury the question of Mr. Musk's state of mind. January 26, we asked for an additional curative instruction, pointing to... What are your ER states for these? Oh, for the ‑‑ if you may bear with me, sorry. January 20, so the actual instruction was given on two excerpts of records, 285 to 86. The colloquy and our objection, the real objection to the curative instruction from our perspective, it was on the burden of proof, and that was interjected by the court at the last minute. We never saw a proposed curative instruction containing the burden of proof. It was a suggestion by defense counsel. You can see it on the transcript, a supplemental excerpt of records, pages 206 to 208. So we never even got to see that. The court just announced it was going to do it, and then the jury came in, and he just gave the instruction. The request for curative instruction is at volume 7, excerpts of records, page 1453. That's the opening page. Then our final objections are at 7, excerpts of records, 1471. I think that 1471 is the explicit one on CENTER. So this jury ‑‑ this objection is preserved, and then we rest. Once again, I didn't hear anything questioning that they have the burden to prove that they have to show an absence of evidence on any particular element, and all I heard was this arguing about the sufficiency of evidence. We presented evidence on materiality and reliance, which are the two issues that they point to, and loss causation throughout the trial. Mr. Port, I mean, I guess what it boils down for me is, on CENTER, recklessness or knowledge are the two options, and the jury was instructed on both. So I'm ‑‑ it seems, then, your argument is boiled down to the we must assume. That's the basis for your error? No, Your Honor, with respect, although we didn't like the objective that we must assume language, too. We didn't apply that. The error here is basically they initially instructed in the disjunctive, which is consistent with the case law, and that's in the model jury instructions. And then he went on to ‑‑ the court then went on to say, assume reckless, fine, and then said, then now you must consider knowledge. So essentially, while it was disjunctive when he initially stated the standard, he then conflated it and said, essentially, plaintiff needs to show both. That's how I understand it. That's what the jury instruction reads. I don't think it's ‑‑ I think that's the only really reasonable reading of it. At a minimum, it's confusing. So you believe the jury instruction required the jury to find ‑‑ well, to assume recklessness and find knowledge meant you have to find both? Yes. Okay. So I see in your proposed instruction you said you wanted something that clearly stated they have to treat the center element as having been proven. Correct. And that was never ‑‑ there was nothing else in the instructions. The court never told the jury that they had to assume that element had been met. It just said you ought to assume that Mr. Musk acted with a little bit of recklessness. Just reckless this way, but not that the center had been met. Not that that element had been met. And I think we were consistent, fairly consistent in making that objection, as counsel suggests, and as the court has heard, there's a lot of back and forth in connection with the jury instructions. On two other very quick points, first of all, Your Honor, you're correct in terms of what we're seeking in terms of the 50B. We would seek judgment. I think the court can read that issue. I think Rule 50, there is no procedural bar, as counsel for defendants suggested. They cite no authority if there's any bar. All that's required is that you don't ‑‑ you cannot add grounds that you have to, you know, 50B is a renewed motion under 50A, and you cannot add grounds. We didn't add any grounds. Well, just to be clear, you are not seeking from us a verdict. Correct. Yes, correct. Under either of our issues. I confess I was confused as I went through the papers about that, but just to be clear at this point, your argument is that, not that you're entitled to a verdict, you argue that if you obtain a new trial, you're entitled basically to a directed summary judgment with regard to materiality such that the jury in a new trial would be instructed to assume or whatever term is used that materiality has been established.  I mean, the only remaining issue would be loss, causation, and damages on a new trial, at least as regard to ‑‑ Is there a case that would allow plaintiffs to move for judgment as a matter of law on one of the elements of their claims? Because I tend to think that this would be procedurally barred. It's a very unusual request. There is no direct case on point, Your Honor. It's explicit in Rule 50A. It says you can move on any issue or claim. So that's explicit. Rule 50B says you renew on ‑‑ it cites back to 50A. It's also read together with Rule 56. Summary judgment is essentially the same standard, the same rule, the same procedure, and there summary judgment is given on issues all the time. So it's unusual, but I think it's allowed under Rule 50A and Rule 50B. And so I think we preserved it, and that's what we'll be asking. I think it's properly before the court. And I think the court, you know, if you order a new trial on erroneous jury instruction, you may not have to reach this issue, but I think you should, because, you know, just for the efficiency, it's right before the court. And the evidence here is simply so overwhelming and inarguable. We cite to SEC v. Murphy that some statements are so obviously material that it's really inarguable. And I think stating that funding is secured and investor support is confirmed for a $60 billion Go private transaction for a public company is the sort of thing that this court would agree is just material on its face. So it's not really arguable. And you can read the brief. There's pages and pages, as your Honor knows, of record sites showing, demonstrating that it was material. We present it. It's really something that's often ‑‑ that is subject to expert testimony. The only expert testimony was from plaintiffs saying that it was material and the loss causation was established. No expert, no witness testified that Ms. Thompson suggested that it was a full corrective disclosure on August 13th or that it wasn't material. Every witness consistently said that these statements were material. Okay, counsel. Thank you for your arguments. Thank you very much. Thanks to both counsel for your helpful arguments. This matter is submitted.
judges: CLIFTON, SUNG, SANCHEZ